IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JANE DOES 1-4, 6 & 7,                                                                PLAINTIFFS

v.                                              CIVIL ACTION NO.: 3:13-cv-220-NBB-SAA

RUST COLLEGE, *et al.*,                                                              DEFENDANTS

## ORDER

Plaintiffs Jane Does 1-4, 6, & 7 ("Jane Does") have moved to compel production of documents from defendants Rust College and David Beckley ("Rust") relating to sexual harassment claims at Rust College over the last ten years. Docket 103. The discovery requests were originally propounded on February 10, 2015, and defendants responded on March 16, 2015. Docket 82 & 93. The parties have conferred and resolved all objections to the propounded requests except Request for Production Nos. 17 and 22.

Request for Production No. 17 seeks, "each and every 'document' relating to the investigation and findings on each allegation of 'sexual harassment' or gender based misconduct that "Rust College" has conducted in the past ten (10) years." Docket 103, p. 2. Request for Production No. 22 requests, "each and every 'document' related to any communication (sent or received) with any police or law enforcement agency related to any claim by a student at 'Rust College' of 'sexual harassment' or gender based misconduct within the last ten (10) years." Docket 103, p. 3. Defendants object to both requests as "overly broad, unduly burdensome . . . and . . . not reasonably calculated to lead to the discovery of admissible evidence." Docket 103, p. 2-3.

1

The claims in these cases grow out of allegations of multiple specific incidents of sexual assaults committed by defendant Oliver upon multiple Rust College female students and staff over a period of years. Plaintiffs claim the requests for production are relevant to the essential elements of their Title IX claims [Docket 105, p. 6-11], and permitting production would provide evidence that Rust failed "to prevent similar incidents, . . . to investigate, . . . to develop policies, and . . . to appropriately respond to the actions of Defendant Oliver and other employees who engaged in the same or similar conduct resulted in Plaintiffs being denied the benefits of Defendant's educational program." Docket 105, p. 8. Plaintiffs also argue that "[t]he most important aspect of the documents requested is to allow Plaintiffs to glean admissible evidence regarding the deliberate indifference shown to the same or similar circumstances as those which gave rise to the Plaintiffs' injury." Docket 105, p. 8.

Defendants, on the other hand, contend these requests overstep the bounds of the liberal discovery rules because they are not reasonably calculated to lead to the discovery of admissible evidence for the claims asserted by these plaintiffs in these cases. Docket 109. More specifically, defendants claim that despite the plaintiffs' assertions, these requests are not relevant to proving that Rust promoted a sexually hostile educational environment or was deliberately indifferent to the plaintiffs' harassment because those claims require proof that Rust had actual notice of Oliver's harassment of each of the individual victim plaintiffs. Docket 109.

Federal Rule of Civil Procedure 26(b)(1) provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The United States Supreme Court has held that the rules of discovery are to be accorded a broad and liberal treatment. *Hickman v.*

*Taylor*, 329 U.S. 495, 507 (1947). Furthermore, the parties' mutual knowledge of all relevant facts is a prerequisite for proper litigation. *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977). However, although Rule 26(b)(1) is to be construed liberally, discovery does not operate without limits. The party seeking to compel discovery has the burden of demonstrating clearly that information sought is relevant to the case and would lead to admissible evidence. *See* Rule 37(a)(2)(B) and -(3); *see also Baptist Health v. BancorpSouth Ins. Services, Inc.*, 270 F.R.D. 268, 272 (N.D. Miss. 2010). Likewise, the party resisting discovery must articulate specifically how each discovery request is not relevant or is overly broad, burdensome, or oppressive. *See* Rule 37(a)(2)(B) and -(3); *see also Export Worldwide, Ltd. V. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).

Plaintiffs assert that "[s]imilar instances or occurrences of sexual harassment or assault are relevant" to proving their Title IX claims, namely that there was a hostile educational environment and that Rust was deliberately indifferent "to the same or similar circumstances as those which gave rise to the Plaintiffs' injury." Docket 105, pp. 6, 8. To prove a hostile educational environment existed, say plaintiffs, they must prove "[s]he (plaintiff) was subjected to a hostile educational environment created by Defendant Rust College's lack of policies and procedures and failure to properly vet its employees or properly investigate and/or address the sexual predatory conduct of Defendant Oliver and other employees engaging in the same or similar conduct." Docket 105, p. 7. Similarly, they say that the requested documents are necessary to prove that Rust was deliberately indifferent "to the same or similar circumstances as those which gave rise to the Plaintiffs' injury." Docket 105, p. 8.

Defendants dispute both the relevance of the requested information and the likelihood that it will lead to discovery of admissible evidence as required by Rule 26(b)(1). Citing the

3

Supreme Court's rulings in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), and *Davis v. Monroe Board of Education*, 526 U.S. 629 (1999), defendants contend that these cases require that a plaintiff who seeks relief under Title IX prove that Rust had actual notice of the incidents giving rise to their claims and failed to remedy the situation. Thus, the defendants assert, proof of any other allegations of sexual harassment by persons other than Oliver would not be relevant to proving the claims asserted in these actions.

*Gebser* noted that Title IX does not explicitly establish a private right of action, and a claim for damages against an educational institution for violation of the statutory scheme is a judicially implied right of action. As a consequence, the Court held that such claims require proof of actual notice of the violation to the institution, and constructive notice is insufficient to support recovery: "[d]amages may not be recovered for teacher-student sexual harassment . . . under Title IX unless a school district official . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct." 524 U.S. at 274. Expressly rejecting the principle of recovery based on constructive notice, the court commented that permitting such recovery "would be at odds" with Title IX's basic principle that actual notice ensures that the funding recipient, or school, has "an opportunity for voluntary compliance before administrative enforcement proceedings can commence." *Id.* at 275. Maintaining this basic principle is important, the Court adds, to "avoid diverting education funding from beneficial uses where a recipient who is unaware of discrimination in its programs is willing to institute prompt corrective measures." *Id.*

Although the *Davis* case involved student-on-student sexual harassment, the Court confirmed the actual notice requirement for Title IX cases such as this. 526 U.S. 629 (1999). Indeed, *Davis* held that a damages claim for sexual harassment under Title IX requires a showing

that the plaintiff experienced harassment individually, not that others experienced harassment. 526 U.S. 629 (1999). The Court found that, "funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 631.

The court has carefully reviewed the Amended Complaints in each of these remaining cases, and it is clear that the plaintiffs' claims are that it was the actions of defendant Oliver which were the source of the sexually hostile educational environment which plaintiffs contend they were required to endure. The one vague mention in the pleadings that "others" committed similar acts is simply too vague and falls far short of convincing the court that plaintiffs require access to other unrelated complaints of sexual misconduct by other persons against individuals who are not parties to this action to succeed in their claims that Rust had actual notice of misconduct by defendant Oliver which might convince a reasonable jury that Oliver constituted a risk of harm to these plaintiffs.

Though the discovery rules are generally applied to permit for liberal discovery, the plaintiffs admit their requests for production seek discovery of acts by and experiences of others rather than the plaintiffs themselves or the named defendants. Thus, because the Supreme Court has affirmatively stated that actual notice is the necessary component to proving the Title IX claims asserted here, the court finds that these requests were not reasonably calculated to lead to the discovery of admissible evidence related to any party's claims or defenses. Defendants must only produce any document relating to gender based misconduct or sexual harassment by

defendant Oliver during the requested period. Assuming that those documents have already been produced, the Motion to Compel is DENIED.

SO ORDERED, this the 4th day of June, 2015.

                                          /s/ S. Allan Alexander
                                        UNITED STATES MAGISTRATE JUDGE